[No. 2829–3.    Division Three.    February 6, 1979.]

JOHN W. GAMBILL, *Appellant,* v. THE WESTERN
CONFERENCE OF TEAMSTERS PENSION TRUST
FUND, *Respondent.*

*Quackenbush, Dean, Bailey & Henderson,* and *Claude Bailey,* for appellant.

*Perkins, Coie, Stone, Olsen & Williams,* and *Bruce D. Corker,* for respondent.

ROE, J.—Plaintiff Gambill has worked in the trucking industry for his entire working life. He started with Helphrey Motor Freight in 1945. In 1946, he joined Teamsters Union Local No. 690. From 1947 until 1969, he engaged in

many kinds of work for Helphrey; primarily, he worked in the office, but occasionally did bargaining unit work which was subject to the Union's jurisdiction. In the mid–1960's, he took a withdrawal card from Local 690 because his duties then almost exclusively involved office and sales work rather than bargaining unit work. In 1969, Helphrey was acquired by Ringsby–Pacific Limited,[1] and plaintiff was named Terminal Manager in Spokane. In October 1969, the office employees, including plaintiff, joined Teamsters Union Local No. 334. Because he was the Terminal Manager, plaintiff consulted with his superiors in the company to get approval to join the Union, because he still occasionally performed bargaining unit work. Plaintiff was attracted by the Union's pension plan, which included a provision that former Helphrey employees could receive up to 18 1/3 years' pension credit for their prior service with Helphrey. Documentary evidence shows that both the Union and Ringsby agreed that plaintiff could and should join the Union.

Plaintiff remained the Terminal Manager until October 1971, when he became vice–president of Profit Center No. 3, which covered the Pacific Northwest region. In May of 1973, plaintiff again became the Terminal Manager in Spokane. He held that job until July of 1973, when he went to work for another company.

Defendant Western Conference of Teamsters Pension Trust Fund (Trust Fund) is the pension fund established under 29 U.S.C. § 186 (1978), of the National Labor Relations Act (NLRA). The fund is actually administered by Northwest Administrators, Inc., an independent corporation retained by the Trust Fund for this purpose. The trust agreement provides that the fund shall always qualify under the NLRA and under Int. Rev. Code §§ 401, 501 (1978). 29 U.S.C. § 186(a) and (b) provide:

---

[1]Ringsby–Pacific Limited later became Ringsby–United. Plaintiff's employer during all relevant periods will be referred to as "Ringsby."

(a) . . .

It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; . . .

. . .

(b) . . .

(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

Section 186(d) provides criminal penalties for violation of this section. The only exception is very limited, and is for payments to trust funds, such as defendant, for the sale and exclusive benefit of employees of such employer, their families and dependents. 29 U.S.C. § 186(c)(5).

Ringsby began contributing to the fund on plaintiff's behalf when he joined Local 334 in 1969. These contributions continued until plaintiff left Ringsby's employ in July 1973. Plaintiff first contacted Northwest Administrators, Inc., in Seattle in 1972; he was then told that his management status raised a serious question about his pension eligibility. Plaintiff and Ringsby were both notified about a month later that the administrators had determined that he was ineligible. The administrators tendered to plaintiff a refund of Ringsby's contributions, and placed the monies in a segregated account. Defendant has stated that the tender is still in effect.

In 1975, plaintiff formally applied for a pension. His application was denied, so he appealed to the Trust Fund's Benefit Review Committee, which upheld the denial. This

action followed. The trial court, having considered the relevant documents, depositions of plaintiff, of an employee of Northwest Administrators, and of a now retired Union officer, and an affidavit of a vice–president of Northwest Administrators, granted defendant's motion for summary judgment. The trust agreement and the pension plan together define employees eligible for pension benefits as those who are covered by a pension agreement between union and employer. The pension agreement in this case specifically *excludes* from its coverage "*supervisory . . .* employees within the meaning of the Labor Management Relations Act of 1947, as amended." (Italics ours.) The relevant section of that act, 29 U.S.C. § 152(11) (1973), provides:

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Defendant contends: (1) that no genuine issue of material fact exists, because of the plaintiff's admissions in his deposition, as to whether he was in fact a supervisory employee; and (2) that review in this court is limited to a determination of whether or not the Trust Fund's decision to deny benefits was arbitrary and capricious, unsupported by evidence, or contrary to law.

Taking the second question first, we note that defendant essentially is contending that this court is to review the Trust Fund's denial of benefits to the plaintiff as if it were a decision of an administrative agency. However, Phillip Overman, manager of pension administration for Northwest Administrators, stated in his deposition that the three documents attached to his deposition would have been the only documents before the Trust Fund's Benefit Review Committee. One document, prepared by the

administrators, was described as "a write–up in anticipation of the Benefits Review Committee meeting," consisting of brief explanations of "what the request is, what the requirements of the Plan are, and the reason for the request." This document states in part:

> It is the determination of the Administrative Office that Mr. Gambill was not part of the bargaining unit and that due to the scope of Ringsby's operations in the Northwest in 1969 and 1970, any bargaining unit work he may have performed would have been limited. Also, his participation in the Plan was discriminatory inasmuch as first level supervisors working under his control were considered "management" and thereby excluded from participation in any union benefits.

This seems to indicate that Northwest Administrators performed an investigation, but its scope is not made clear, nor is it clear what facts, other than that certain first–level supervisors were working under plaintiff's control, were considered in making the determination. There is no record of what facts or evidence were considered by the Benefits Review Committee; it did not draw up findings of fact or conclusions of law; the record does not show that plaintiff was offered an opportunity to appear before the Committee to explain his situation. Consequently, we cannot apply an administrative standard of review to the board's determination. We must treat this case as a trial de novo in the superior court on the questions of fact and law involved. To attempt to review the Trust Fund's decision, as we would the decision of an administrative agency, is not only impossible because of the lack of a record from the Trust Fund's committee, but would also present serious constitutional due process questions, particularly regarding notice and opportunity to be heard.

The question before us, then, since the trial court granted summary judgment, is whether a genuine issue of material fact exists as to whether the plaintiff was a supervisory employee within the meaning of 29 U.S.C. § 152(11) (1973), quoted above.

Plaintiff asserts that there is a genuine issue of fact because, although he possessed the authority, due to his rank in the company, to perform certain of the supervisory duties enumerated in the statute, he did not in fact exercise such power, but was instead very careful to refrain from doing so because such exercise might have jeopardized his membership in the Union. In his deposition he stated that, while he was Terminal Manager, he *could have* hired, fired, or disciplined employees, but in fact left such actions to the dock manager and the office manager, and never performed them himself. He also stated that the dock manager and office manager not only reported to him but were, in a real sense, supervised by company vice–presidents in Denver. He stated that, while he was vice–president of the Pacific Northwest region, he could and would have recommended the firing of an inefficient terminal manager, but he asserted that he never actually did so. He admitted that he did participate in decisions to hire people to manage the various terminals in the region; however, he claimed that the senior vice–president had the authority to make the actual hiring decision, and that his own role was merely advisory. He stated that, while he had no authority to transfer employees even within his own geographical area, he could have recommended such transfers, but that the one time he did so, his recommendation was not followed. He testified that his job as vice–president consisted of visiting the different terminals to check sales activity and compliance with company procedure, and to advise on what areas needed improvement. He affirmed that he thoroughly and comprehensively evaluated how well or poorly the terminal managers were doing their job, and that he made written performance evaluations and recommendations on them once a year. He stated, too, that he would recommend which terminal managers or employees should get raises, and that, although the company did not always follow his

recommendation, sometimes it did.

■ To be a supervisor within the meaning of the statute, an employee need not possess all the enumerated powers; possession of any one of them is sufficient. *Furr's, Inc. v. NLRB*, 381 F.2d 562 (10th Cir.), *cert. denied*, 389 U.S. 840, 19 L. Ed. 2d 105, 88 S. Ct. 70 (1967). *NLRB v. Gray Line Tours, Inc.*, 461 F.2d 763, 764 (9th Cir. 1972), states:

> It is the rule that only one of the powers set forth in § 2(11) need be present to qualify an employee as a "supervisor." NLRB v. Fullerton Publishing Co., 283 F.2d 545, 548 (9th Cir., 1960). And actual existence of supervisory authority rather than its exercise is determinative.

Other cases, though, have said that "the nearly total lack of evidence of authority actually exercised negates its existence." *Oil, Chem. & Atomic Workers Int'l Union, AFL–CIO v. NLRB*, 445 F.2d 237, 244 (D.C. Cir. 1971), *cert. denied*, 404 U.S. 1039, 30 L. Ed. 2d 730, 92 S. Ct. 713 (1972). However, such cases have involved the problem of distinguishing between mere "paper power" and real authority.

> A supervisor may have *potential* powers, but theoretical or paper power will not suffice.

(Italics ours.) *NLRB v. Security Guard Serv., Inc.*, 384 F.2d 143, 149 (5th Cir. 1967). Here, although plaintiff claims that he did not actually exercise his power, it seems clear beyond cavil that he had that power contemplated by the case law. This is not a case involving an employer's attempting to strip an employee of union protection by cloaking him with inchoate authority which is not exercisable in fact. *See, e.g., NLRB v. Griggs Equip., Inc.*, 307 F.2d 275 (5th Cir. 1962). Plaintiff admitted that he performed supervisory duties. He is not removed from the category of supervisor just because he did not often have final authority over the matters within his responsibility.

608

The trial court's judgment is affirmed. When the mandate issues on this opinion, defendant shall remit to plaintiff the monies received on his behalf which were placed in the segregated account.

MUNSON and McINTURFF, JJ., concur.